IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KATHY ANN DIXON RIPPEE                                          PLAINTIFF

v.                              Civil No. 12-2032

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Kathy Rippee, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Procedural Background:

The Plaintiff filed her applications for DIB and SSI on January 28, 2010,and March 25 ,2010, respectively, alleging an onset date of January 15, 2010[1], due to chronic obstructive pulmonary disease ("COPD"), osteoarthritis (hips, shoulders, neck), degenerative disk disease ("DDD") of the lumbar spine, scoliosis, cervicalgia, and obesity.  Tr. 131-143, 207-208, 223, 232.   The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 71-77, 85-88. An administrative hearing was held on June 16, 2011.  Tr. 25-59.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed the equivalent of a high school education and training as a forklift driver. Tr. 29.  She had past relevant work ("PRW")

---

[1]At the administrative hearing, Plaintiff amended her onset date to September 4, 2008.  Tr. 12, 43-44.

experience as a camera operator, waitress, dishwasher, cashier, sandwich maker, case aide, van driver, and security guard.  Tr. 18, 30-42, 52-53, 173, 181, 199-206.

On October 26, 2011, the ALJ found Plaintiff's COPD, mild osteoarthritis, DDD/scoliosis of the lumbar spine, cervicalgia, and obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 12-14.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work that did not involve climbing ladders, roper, or scaffolds and only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  Tr. 14-17.  The ALJ also found Plaintiff could not perform overhead work and must avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.  With the assistance of a vocational expert, the ALJ found Plaintiff could return to her PRW as a case aide at a senior center, van driver at a senior center, and security guard.[2]  Tr. 18-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 27, 2011.  Tr. 1-6.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  ECF No. 5.  Both parties have filed appeal briefs, and the case is now ready for decision.   ECF Nos. 10, 11.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

## II.    **Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

---

[2]In the alternative, the ALJ found that Plaintiff could perform work as a small products assembler and inspector.  Tr. 19.

adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider

the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion:**

Plaintiff contends that the ALJ erred in concluding that she was not disabled because he failed to find her edema to be a severe impairment, relied on two consultative examinations conducted by a nurse practitioner, conducted an improper credibility analysis, failed to include Plaintiff's need for frequent restroom breaks in her RFC, and concluded Plaintiff could return to her PRW.

**A.     Non-severe Impairments:**

In her first point, Plaintiff asserts that the ALJ incorrectly determined that her edema, which necessitated her taking Lasix and resulted in the need for numerous restroom breaks, was a non-severe impairment. We disagree. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. *See* 20 C.F.R. § 404.1527.

A review of the evidence reveals that Plaintiff was diagnosed with and treated for edema on only one occasion during the relevant time period. Tr. 358, 371. On April 25, 2011, a doctor at the Good Samaritan Clinic diagnosed Plaintiff with pitting edema and prescribed Lasix. However, we can find no other evidence to indicate that Plaintiff was retaining fluid or that she had been prescribed medication to treat edema. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Other physical examinations documented nothing more than tenderness and stiffness in the

4

neck and lumbar spine.  And, there is no evidence to indicate this was an ongoing problem, as she was diagnosed with and prescribed medication on only one occasion.

### B.    Acceptable Medical Sources:

In her second argument, Plaintiff asserts that the ALJ erred by relying on the consultative evaluation of a nurse practitioner.  Specifically, Plaintiff contends that a nurse practitioner is not an acceptable source.  According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007),  determinable impairment, provide medical opinions, and be considered treating sources.  20 C.F.R. §§ 404.1527 (a)(2), (d) and 416.927 (a)(2), (d) (2007).  Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.  20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). Other sources, including nurse-practitioners, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also* SSR 06-3p.  They can not, however, establish the existence of a medically determinable impairment.

Here, the ALJ used the nurse practitioner's evaluations to determine the severity of, rather than the existence of, Plaintiff's medically determinable impairments.  And, as such, used it properly.  We also note that both of the nurse practitioner's evaluations were endorsed by  medical doctors, entitling them to treating source weight.  *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source). Accordingly, we can find no error in the ALJ's reliance on the nurse practitioner's evaluations.

### C.    Subjective Complaints:

Next, Plaintiff contests the ALJ's credibility evaluation, asserting that he did not properly consider her subjective complaints.  Again, we find no merit in Plaintiff's argument.  The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence

AO72A
(Rev. 8/82)

presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and, 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The standard of evaluation is not whether Plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

In the present case, the ALJ assessed Plaintiff's credibility by thoroughly examining the application documents, medical evidence, and testimony at the hearing in accordance with relevant Eighth Circuit case law, regulations, and Social Security Rulings. *See Polaski*, 751 F.2d at 948 (8th Cir. 1984); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p. In a questionnaire Plaintiff submitted in conjunction with her disability application, Plaintiff described her symptoms as "hard to breathe, [and having] pain in [her] lower back, hips, shoulders, and neck." Tr. 207. And, we do note the evidence documenting Plaintiff's lung impairment. However, against her treating physician's advice, Plaintiff continued to smoke as much as one and one-half packages of cigarettes daily throughout most of the alleged period of disability. Tr. 16, 248, 251, 256, 284, 293, 303. *See Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (ALJ appropriately considered Plaintiff's failure to stop smoking in making credibility determination); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). Further,

6

pulmonary function studies conducted in 2009 and 2011 documented only mild COPD. Tr. 253-258, 385-388.

The lack of evidence documenting physical limitations and restrictions is also problematic. In a report dated October 2009, Dr. C.S. Graham, Plaintiff's chiropractor, stated that she was released from care without any restrictions. Tr. 17, 259-261. He indicated that she was examined and released from care with "no restrictions regarding sitting, walking, standing, carrying objects, and . . . normal traveling." Tr. 261. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (in determining credibility, ALJ properly considered evidence that treating physicians did not place any restrictions). The ALJ also noted that diagnostic examinations revealed essentially normal results. Tr. 17, 347-349, 364-366. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (lack of supporting medical evidence is one factor that may be considered in determining credibility). In July 2010, x-rays of her thoracic spine revealed small degenerative endplate osteophytes with no acute abnormalities. Tr. 347, 364. X-rays of her lumbar spine taken at the same time showed mild levoscoliosis of the lumbar spine with disk space narrowing at the L5-S1 level. Tr. 349, 366. Physical examinations also revealed only tenderness and stiffness, for which she was treated conservatively via pain medication and chiropractic care. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain).

The record is also devoid of evidence to support Plaintiff's alleged medication side-effects. At the administrative hearing, Plaintiff alleged that diuretic medication side-effects required her to use the bathroom about 20-to-30 times in an 8-hour workday. However, as previously discussed, we can discern only one treatment note documenting edema and requiring a prescription for Lasix. And, the record does not contain any documentation, aside from Plaintiff's testimony, to indicate that the Lasix necessitated the number of bathroom visits alleged. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (no

7

medical evidence of record to support plaintiff's allegations of medication side effects).  The evidence also fails to indicate whether the Lasix was prescribed long-term or just for a short period of time.

Plaintiff's daily activities also offer no support for her allegations of disability.  In a function report dated February 11, 2010, Plaintiff reported that she is able to take care of her personal needs (washing and combing her hair hurts her shoulders), cook, clean, do household chores, perform some gardening, drive, shop, handle her finances, read, watch TV, and use the computer "all the time," and camp and fish (with limitations imposed by her breathing and back pain).  Tr. 15, 209-216.  *See Buckner v. Astrue*, 646 F.3d 549, 558-559 (8th Cir. 2011) (in discounting credibility, ALJ properly considered evidence that Plaintiff could care for his son and ill girlfriend, do house cleaning, do yard work, leave his residence every day, ride in a car, go out alone, go shopping in stores, manage his finances, use a computer, play sports occasionally, socialize and play games with friends or family, and attend religious services).

We also note that Plaintiff has voiced many complaints concerning a financial inability to obtain medical services and medication.  In July 2010, the record indicates that Plaintiff began to avail  herself of the low cost/indigent medical services offered by Good Samaritan Medical Clinic and received at least some of her medications through the Prescription Assistance Program.  She also had the money to purchase cigarettes until she allegedly quit smoking in 2010.  As such, we do not find that her financial situation excuses her failure to obtain medical treatment and/or take medications as prescribed.  *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (lack of evidence Plaintiff chose to forgo smoking to finance medical treatment is a factor to be considered).  Accordingly, we can find no error in the ALJ's credibility analysis.

AO72A
(Rev. 8/82)

D.     **RFC**:

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

In April 2009, Plaintiff underwent a general physical examination with Marie Pham-Russell, a nurse practitioner for Dr. Rebecca Floyd.  Tr. 248-251, 352.  Although Plaintiff complained of shortness of breath with exertion, her exam revealed normal breath sounds and air movement.  She exhibited a normal range of motion in her cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, and ankles; and neurologically, her biceps, triceps,

9

patellar, and Achilles were essentially normal.  Tr. 249-250.  Plaintiff had no muscle spasms, no

muscle atrophy, no muscle weakness, and no sensory abnormalities.  Tr. 249.  She exhibited

normal limb function; normal grip strength in both hands; and was able to hold a pen, touch

fingertips to palms, oppose thumb to fingers, and pick up a coin.  Tr. 249.  Plaintiff was also able

stand and walk without assistive devices, walk on heel and toes, and squat and arise from a

squatting position.  Tr. 249.  Nurse Pham-Russell diagnosed Plaintiff with COPD and tobacco

abuse, but noted no limitations.[3]  Tr. 251.  We also note Dr. Graham's indication in October 2009

that Plaintiff was released with no restrictions.  Tr. 261.

On April 27, 2010, Nurse Pham-Russell, now working in conjunction with Dr. Stephanie

Frisbie, conducted a second physical examination.  Tr. 264-267.  Plaintiff had a normal range of

motion in her cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, and

ankles; and neurologically, her biceps, triceps, patellar, and Achilles were essentially normal.  Tr.

265-266.  She had no muscle spasms, no muscle atrophy, no muscle weakness, and no sensory

abnormalities.  Tr. 265.  Further, Plaintiff exhibited normal limb function; normal grip strength

in both hands; and was able to hold a pen, touch fingertips to palms, oppose thumb to fingers, and

pick up a coin.  Tr. 265.  Nurse Pham-Russell also noted the ability to stand and walk without

assistive devices, walk on heel and toes, and squat and arise from a squatting position.  Tr. 265.

She diagnosed Plaintiff with cervicalgia, low back pain status post motor vehicle accident, and

COPD.  Tr. 267.  Nurse Pham-Russell concluded that Plaintiff would have only mild to moderate

lifting limitations.

---

[3]As previously discussed, Nurse Pham-Russell's evaluation contains the signature of Dr. Rebecca Floyd, indicating Dr. Floyd's agreement with her assessment and plan of treatment.  We note that it is common for nurse practitioners and doctors to work as a team to treat patients.

10

Additionally, on May 19, 2010, Dr. Bill Payne, a non-examining, consultative physician completed a physical RFC assessment.  Tr. 270-277.  After reviewing only her medical records, Dr. Payne concluded that Plaintiff could perform light work, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  This assessment was affirmed by Dr. Julius Petty on June 29, 2010.  Tr. 278-280.

Plaintiff maintains that the RFC is faulty because it makes no provisions for the numerous restroom breaks she requires.  We disagree for the reasons previously noted in this opinion.  And, we find substantial evidence supports the ALJ's determination that Plaintiff can perform a limited range of light work.

E.   **Return to PRW:**

Lastly, Plaintiff contends that the ALJ erred in concluding that she could return to her PRW.  Specifically, she maintains that the ALJ failed to properly ascertain the physical and mental demands of her PRW.

Plaintiff testified that she had past work experience as a case aide at a senior center, as a van driver at a senior center, and as a security guard.  Tr. 18, 38-43.   She also testified and provided a written description of these positions. Tr. 30-42, 52-53, 173, 181, 199-206. Utilizing a properly formulated hypothetical, the ALJ asked the vocational expert whether Plaintiff's RFC prevented her from performing her PRW, to which the expert responded it did not.  *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (hypothetical question to a vocational expert is properly formulated if it sets forth impairments supported by substantial evidence in record and accepted as true by ALJ).  The vocational expert testified that Plaintiff could perform the job of case aide as it is generally performed, the job of van driver as Plaintiff actually performed it, and

11

the job of security guard as it is generally performed.  Tr. 18, 53-54.  *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (vocational expert's response to properly posed hypothetical supplied substantial evidence to support ALJ's finding that plaintiff could return to past relevant work).  Because a Plaintiff can not be found to be disabled if she is capable of performing her PRW as it was actually performed or as it is generally performed in the national economy, the ALJ correctly determined that Plaintiff was not disabled.  *Evans v. Shalala*, 21 F.3d 832, 833-834 (8th Cir. 1994).

**V.**      **Conclusion**:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>6th</u> day of February 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE

AO72A
(Rev. 8/82)